UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ANA SMULEVICH,

    Plaintiff,

v.                                                                                                  Case No:

HARRY BRUDER, an individual;
STEPHANIE BRUDER, an individual;
CAROLYN BILLIE, an individual; JANICE
BILLIE, an individual; ROCK'N
MASSAGE, INC., a Florida for-profit
corporation; and, ROCK'N MASSAGE,
TAMPA, INC., a Florida for-profit
corporation,

    Defendants.
_____/

**COMPLAINT FOR UNPAID OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT AND VIOLATION OF THE FLORIDA WHISTLE BLOWER ACT**

    The Plaintiff, ANA SMULEVICH, by and through the undersigned counsel and in accordance with Rule 12 of the Federal Rules of Civil Procedure, hereby files this Complaint against and sues each Defendant named herein on the following grounds:

*The Main Actors and The Setting Of The Stage*

    1.    The Plaintiff, ANA SMULEVICH (hereinafter referred to as "Plaintiff" and/or "Ana") is an adult individual, sui juris and a resident of Miami-Dade County, Florida.

    2.    Defendant HARRY BRUDER, (hereinafter referred to a "co-Defendant", or "Harry"), is an adult individual, sui juris, and resides at 1281 94th Street, Bay Harbor Florida, 33154.  Harry is the Vice-President and owner of co-Defendant ROCK'N MASSAGE, INC., and the Vice-President, owner, and a Director of co-Defendant ROCK'N MASSAGE, TAMPA INC.

1

3. Co-Defendant Harry is also the husband of Defendant STEPHANIE BRUDER.

4. Defendant STEPHANIE BRUDER, (hereinafter referred to a "co-Defendant", or "Stephanie"), is an adult individual, sui juris, and resides at 1281 94th Street, Bay Harbor Florida, 33154. Co-Defendant Stephanie is an owner of co-Defendant ROCK'N MASSAGE, INC., and an owner of co-Defendant ROCK'N MASSAGE, TAMPA INC.

5. Co-Defendant Stephanie is the wife of co-Defendant Harry, and she is also an elected official of the City of Bay Harbor Florida, serving as a Bay Harbor City Commissioner.

6. Defendant CAROLYN BILLIE, (hereinafter referred to a "co-Defendant", or "Carolyn"), is an adult individual, sui juris, and resides at 5400 SW 3rd Court, Plantation Florida, 33317. Carolyn is the President and an owner of co-Defendant ROCK'N MASSAGE, INC., and the President, owner, and a Director of co-Defendant ROCK'N MASSAGE, TAMPA INC.

7. Defendant JANICE BILLIE (hereinafter referred to a "co-Defendant", or "Janice"), is an adult individual, sui juris, and resides in Broward County Florida. Co-Defendant Janice is an owner of co-Defendant ROCK'N MASSAGE, INC., and an owner of co-Defendant ROCK'N MASSAGE, TAMPA INC.

8. Janice is a member of the Seminole Indian Tribe and a convicted felon, having been convicted of the crime of murder. She is currently subject to conditions of parole as a result of such conviction.

9.      Defendant Carolyn is the sister of Co-Defendant Janice and also a member of the Seminole Indian Tribe.

10.     Defendant ROCK'N MASSAGE, INC. (hereinafter referred to as "Rock'N Massage") is Florida for-profit corporation with its principal place of business located at the home of Stephanie and Harry Bruder, at 1281 94th Street, Bay Harbor Florida, 33154.

It is unknown at this time whether Rock'n Massage possesses an occupational license to conduct business out of the Bruder home.

11.     Defendant ROCK'N MASSAGE TAMPA, INC. (hereinafter referred to as "Rock'N Massage Tampa") is Florida for-profit corporation with its principal place of business located at the home of Stephanie and Harry Bruder, at 1281 94th Street, Bay Harbor Florida, 33154. It is unknown at this time whether Rock'N Massage Tampa possesses an occupational license to conduct business out of the Bruder home in Bay Harbor, Florida.

12.     This is an action under the federal Fair Labor Standards and Employment Act, 29 U.S.C. § 216(b)  for unpaid overtime owed Plaintiff Ana, plus interest, liquidated damages and attorney's fees and costs, against each of the Defendants: Harry, Stephanie, Carolyn, Janice, Rock'N Massage and Rock'N Massage Tampa for employing Ana in a non-exempt position whereby she was on-call and required to serve each of the Defendants' business and personal interests, 24 hours a day, 7 days a week since the initiation of her employment in May 2010.

13.     From May 2010 until her employment was terminated in June 2015, the Plaintiff worked in excess of 40 hours a week for the Defendants each and every week

of each year, with the exception of a single week in 2014, where she was provided one week of paid vacation time off from work.

14. The Plaintiff also seeks damages against the Defendants pursuant to Section 448.102(3), of the Florida Statutes, known as the Florida Whistle Blower Act ("FWBA"). Plaintiff Ana was terminated from continued employment with the Defendants in retaliation for her objection to the "cash only" pay policy of the Defendants, whereby they pay the majority of their employees including the Plaintiff, in cash only and refused the Plaintiff's request to pay her as legally required for any employee, so that her income would be legally documented.

15. In March or April 2015, Plaintiff Ana advised co-Defendants Harry and Stephanie that she was unable to qualify for a home mortgage because she could not document or prove her actual income. She requested that the Defendants pay her, as required for an employee, with deductions of income tax, social security and medicare withholdings from her earnings. Co-defendants Harry and Stephanie responded to Plaintiff that they would "think about" her request and get back to her. Instead, within weeks after her request, the Defendants concocted a false reason as a pretext to terminate her employment and so did terminate her employment for the purpose of avoiding compliance with the federal employee income withholding requirements of 26 U.S.C. §§3401-3406 and 26 U.S.C. §§ 3101-3128.

16. At all times relevant, the Defendants were the Plaintiff's employer as defined by 29 U.S.C. §203(d). The primary function of the Defendants is to provide physical massage services to clients and customers (collectively referred to as "patrons'), attending gaming and poker establishments throughout South Florida and

the Tampa, Florida areas, primarily at the Hard Rock Casino, Hollywood Florida; the Seminole Indian Casino at Coconut Creek, Florida; the Hard Rock Casino, Tampa Florida; the Seminole Casino Classic, Hollywood Florida, and, at the Seminole Casino, Brighton Florida.

17. The Defendants earn cash revenue from the patrons visiting each of the gaming establishments by charging $2.00 cash for each minute of massage services provided to a patron on the Casino gaming floors during all hours that the establishments are open for business, including during highly publicized and attended, high-stakes poker tournaments. After payment to the "masseuse girls" who provide the massage services to the patrons, the Defendants maintain 60%, or half, of all cash proceeds collected. In each year since the Plaintiff's employ, the Defendants had at least two employees working for them at all times who handled goods or materials that were transported through interstate commerce, and generated millions of dollars in cash revenues far exceeding the $500,000.00 minimum requirement for application of the FLSA.

18. Defendants Rock'N Massage and Rock'N Massage Tampa are also so inter-related in their common management, ownership, interests, operations, and control that they are each considered a single enterprise as defined by 29 U.S.C. 203 (r ) & (s), and the Plaintiff's employer as defined by 29 U.S.C. 203(d) .

19. Further, each of the individual Defendants intentionally created the corporate entities of co-Defendants "Rock'N Massage" and "Rock'N Massage Tampa", for the sole purpose of attempting to avoid personal liabilities for the intentional and concerted effort to avoid payment of overtime obligations to any employee, including

5

Plaintiff Ana. Each Defendant intentionally operated the corporate entities consistent with that illegal and unlawful purpose. Therefore to the extent necessary, there is no veil of any corporate shield or protection afforded to any of the individual Defendants for their intentional and unlawful creation and operation of either of the Defendant corporate entities.

20. This court maintains original subject matter jurisdiction over the Plaintiff's claims under the Fair Labor Standards Act and supplemental jurisdiction over the Plaintiff's claims of retaliation under the Florida Whistle Blower Act, Section 448.102(3), Florida Statutes.

21. Each of the Defendants herein reside, work, and have committed the acts and omissions which form the basis of this lawsuit within Miami-Dade and Broward Counties Florida, and therefore have subjected themselves personally to the jurisdiction of this Court.

### *The Main Act: The Casino Massage Business is Rock'N in Florida*

22. On any given day, from the date of Plaintiff Ana's initial employ with the Defendants through her unlawful retaliatory termination, the Defendants employed dozens of female masseuse girls for the sole purpose of walking through the gaming areas at the 1) Hard Rock Casino, Hollywood Florida; 2) the Seminole Indian Casino at Coconut Creek, Florida; 3) the Seminole Casino Classic, Hollywood Florida, 4) the Seminole Casino, Brighton Florida, and 5) the Tampa Hard Rock Casino and offering the Casino patrons massages. They charged $2 per minute for each massage, paid in cash on the spot.

23. The Defendants' operated their business enterprise out of the Bay Harbor home of co-Defendants Harry and Stephanie Bruder, and otherwise had no office location, expense or overhead. The Bruders were responsible for the day-to-day operations of the business, while Co-Defendants Carolyn Billie and Janice Billie together enjoyed the majority of profits from the business, simply because they utilized their Seminole Indian-tribe connections to introduce and allow the businesses to operate within each of the Casinos.

24. For approximately the first 6 months of her employ, Plaintiff Ana worked for the Defendants at the Hard Rock Casino in Hollywood. Thereafter, the Defendants added the Coconut Creek Seminole Casino in Coconut Creek as a client, where 3 masseuse girls worked the Casino floor 3 days a week, from 2:00 pm until 5:00 a.m. (15 consecutive hours, 3 days week or 45 hours each week).

25. Plaintiff Ana's primary employment responsibility was to appear at the various south-Florida located Casinos and check- in the masseuse girls as they appeared for work, and, when the shifts ended, take receipt of the cash monies paid the masseuse girls and the girls' time sheets which evidenced the length of each massage and amount paid. Following instructions from her employers, the Plaintiff immediately returned to the masseuse girls who worked at the Coconut Creek Casino, 40% of the cash they received and converted from complimentary tickets as their share of the overall revenues, and then kept the remaining 60% of cash and all of the complimentary tickets and accountings until each Thursday.

26. Plaintiff Ana also collected cash proceeds and time sheets from the masseuse girls working at the Hard Rock Casino in Hollywood, although someone else

employed by the Defendants had already paid some of the masseuse girls their cash incomes.

27.   On various days of the week, Plaintiff Ana was then required to travel to and deposit at the bank where the Defendants maintained an account, the cash proceeds collected from each Casino location during the preceding week. On the following Friday morning, she was required to drive to the Bruder home by at 7:00 am., and turn in the bank deposit slips and masseuse girl time sheets from the preceding week.

28.   Plaintiff Ana was also required to be present at the Coconut Creek Casino location for each hour of each shift, or perform other services for the Defendants such as routine errands for co-Defendants Harry and Stephanie, including grocery shopping, picking up their dry cleaning, and transporting their children to various after-school activities.  At all times, 24 hours a day, 7 days a week, Plaintiff Ana was required to possess a charged and fully accessible cellular telephone whereby she could be contacted by either co-Defendant Harry and/or co-Defendant Stephanie, as well as Casino floor managers, pit bosses and concierges to respond to requests from Casino patrons at any of the Defendants' South Florida locations for immediate massage relief. Plaintiff Ana would take the calls, locate the massage girl(s) available, inform them of the need for services; and then travel locally to the Casino and collect the girl[s] time sheets and cash payments.

29.   The Defendants' business at the Coconut Creek Casino location, alone, grew so rapidly that soon before the end of her first year of employment at that location, the Defendants provided on average, 24 masseuse girls, for 49 shifts a week from 2:00

pm to 5:00 am (15 hours per day), 7 days a week (105 hours per week), during which Plaintiff Ana was required to be present at least 6 days of each week for 10 hours each day, and be readily available at all other times to perform the Defendants' personal errands and respond to the immediate needs and requests of the Casino patrons in South Florida. The average masseuse girl performed 200 minutes of massage per shift, thus generating an average of $400.00 cash per girl per shift. Therefore, the weekly cash revenue generated for the Defendants, at the Coconut Creek Casino location, alone, from 2012 through June 2015, averaged approximately $11,760.00 per week, or $611,520.00 per year.[1]

30. The Defendants also continued to provide masseuse girl services at the Hard Rock Casino in Hollywood, but for reasons never explained, a few of the girls who performed services at that location were not paid cash on the spot, but were later compensated as either employees or independent contractors. Plaintiff Ana was required to travel to the Hard Rock Casino in Hollywood, collect the cash proceeds and time sheets for each masseuse girl, and then maintain the remaining cash amounts until she deposited such and then delivered the aforementioned documentation to co-Defendant Stephanie at her Bay Harbor home on each Friday morning.

31. The patrons at the Hard Rock Casino in Hollywood generated enough massage business for the Defendants that they routinely employed 40 masseuse girls for 60-65 shifts per week. The average shift worked at the Hard Rock Hollywood generated 250-300 minutes of massage, generating on average $500.00 of cash revenue for each shift. Therefore, the Defendants received net cash revenues from the

---

[1] 49 shifts on average per week, with an average revenue of $400 per shift, minus the 40% cash payment to the masseuse girl(s).

9

massage work at the Hard Rock Casino, Hollywood of approximately $18,750.00 per week, or $975,000.00 per year.[2]

32. The cash revenues generated at each Casino increased substantially during Poker Tournaments, many of which were advertised by the Casinos as high-stakes tournaments with seven figure payouts. These tournaments attract professional and amateur poker players alike from around the world and significantly increased the Defendants' business, such that in addition to the normal shift staffing requirements, for each tournament the Defendants retained an "entourage" of 50-60 additional masseuse girls, who routinely travel the poker tournament circuit from location to location.

33. During the Plaintiff's employ, the Coconut Creek Casino sponsored 3 such tournaments each year, and the Hard Rock Casino in Hollywood sponsored 4 a year. Unlike the non-tournament shifts, however, the tournament "circuit girls" all collected, as their fee, 50% cash of their massage revenues at the end of each shift. Nonetheless, the addition of 50-60 girls, working each day and averaging $400.00 dollars cash generated for each girl each day during these tournaments more than doubled the Defendants' cash income each week, 7 weeks each year, for an additional cash revenue of approximately $420,000.00 for the Coconut Creek location, and $500,000.00 cash per year at the Hard Rock Casino Hollywood location.

34. The estimate of all cash receipts are conservative because the Defendants required Plaintiff Ana to turn over and provide all time sheets and accountings evidencing the minutes of massage services performed per shift, per masseuse girl, per week to co-Defendant Stephanie each Friday morning.

---

[2] Based on an average of 62.5 shifts per week, and $500.00 cash revenue per shift, minus the 40% paid to the masseuse girls.

35. Co-Defendants Harry and Stephanie informed Plaintiff Ana that a few of masseuse girls working at the Hard Rock Casino were paid as independent contractors. All other masseuse girls received their income in cash at the end of their particular work shift and in accordance with the Defendants' requirements.

36. Co-Defendant Stephanie also advised Plaintiff Ana that she would re-write the weekly accountings given to her each Friday by Plaintiff Ana, and present to co-Defendants Carolyn and Janice, only the weekly accountings and evidence of revenues generated as re-written by Co-Defendant Stephanie. The Defendants maintained no other records of time worked for any masseuse girl or Plaintiff Ana. The Defendants never instructed Plaintiff Ana to record her hours of work and in fact advised her that they did not maintain any records of hours worked, monies received, shifts worked, or the number of masseuse girls employed.

37. During the early Friday morning "drop offs" at the home of co-Defendants Harry and Stephanie Bruder, Stephanie Bruder paid Plaintiff Ana her weekly cash salary. During the first two years of her employment with the Defendants, Plaintiff Ana was paid $600.00 per week with a $1,000.00 year- end bonus. Her pay was then increased to $800.00 per week with the same yearly bonus. During the last year of her employment, Plaintiff Ana was paid $1,160.00 cash per week, a $1,000.00 annual bonus, and the Defendants paid $300.00 per month for two months, toward the cost of an automobile necessary for Plaintiff Ana to travel for her work requirements. Plaintiff Ana was also afforded one week of paid vacation time during her last year of employment.

38. Plaintiff Ana was never paid time and one half for any hour worked in a workweek in excess of 40 and never possessed any discretionary authority in the performance of her work for the Defendants, except perhaps choosing the seat in which she would sit at the particular Casino where she was assigned during the masseuse girls' multiple work shifts.

39. When Plaintiff Ana requested to be paid in accordance with the law so that she could qualify for a home mortgage, the Defendants fabricated a pretext for firing her so as to avoid and deny her request. On or about June 15, 2015, co-Defendant Stephanie invited Plaintiff Ana to meet her for breakfast at a local restaurant. At that time and without warning or notice, co-Defendant Stephanie advised the Plaintiff that she was being terminated because various Casino "vouchers" which are given to patrons as gifts and can be redeemed by the Defendants from the Casino for monies, were missing. Plaintiff Ana did not take any such vouchers and requested review of any documents which supported such accusation. The Defendants refused to produce any such documents, but subsequently provided a letter of reference for Plaintiff Ana which not only affirms her satisfactory work performance but her honesty as well.

40. Within minutes, Plaintiff Ana was replaced by a female employee and former masseuse girl who resides full time in the same house as where co-Defendants Harry and Stephanie Bruder reside, the same location of the principal place of business for Defendants Rock'N Massage and Rock'N Massage Tampa.

41. All conditions precedent to this action have been performed, and the Plaintiff demands a trial by jury as to all claims herein.

***The Closing Curtain***

### COUNT I: Defendants' Violation of the Overtime Provisions of the FLSA

42. The Plaintiff adopts and incorporates herein each and every one of the allegations contained within paragraph 1 through 41 above as if fully re-alleged herein.

43. For every week of her employment with the Defendants, dating from her last day worked July 14, 2015 and the three (3) years immediately prior, the Plaintiff worked for the Defendants, and/or was required to be available to work for the Defendants 24 hours a day, 7 days week, with the lone exception of one week in 2014.

44. Accordingly, the Plaintiff is entitled to compensation from the Defendants at one and one half of her regularly hourly rate, for 6,528 hours worked from June 15, 2014 through June 14, 2015 (51 weeks, 128 uncompensated hours worked each week) During this period of time, Plaintiff's regular hourly rate was $29.00. The Plaintiff was never paid one- and-one half times her hourly salary rate or any monies for work in excess of 40 hours in any workweek.

45. The Plaintiff therefore is entitled to $43.50 plus interest for every hour worked in excess of 40 during all workweeks worked in her last year of her employ, or $283,968.00 plus interest.

46. Between June 15, 2013 and June 14, 2012, the Plaintiff worked 6,656 hours without overtime compensation (128 hours above and beyond 40 each week, 52 weeks). The Plaintiff's regular hourly rate of pay during this period was $20.00. Therefore, the Plaintiff is entitled to $30.00 per hour for all hours worked in excess of 40 in any work week between June 15, 2013 and June 14, 2012, or $199,680.00, plus interest.

47.   Between June 14, 2011 and June 15, 2012, the Plaintiff worked 6,656 hours without overtime compensation (128 hours above and beyond 40 each week, 52 weeks).  The Plaintiff's regular hourly rate of pay from June 2011 through June 2012, was $15.00.  Therefore, the Plaintiff is entitled to $22.50 per hour for all hours worked in excess of 40 in any work week between June 14, 2011 and June 15, 2012, or $149,760.00, plus interest.

48.   As the Defendants' violation of the overtime requirements of the labor Standards Act was knowing and intentional, the Plaintiff is also entitled to a liquidated damage award double the amount of unpaid overtime owed to her for each of the three preceding years.

49.   The Plaintiff is also entitled to recovery of her attorney's fees and court costs in pursuing this action.

WHEREFORE, the Plaintiff demands judgment against each Defendant, jointly and severally, in the amount of $633,408.00, plus a liquidated  damage award of twice that amount, plus interest, attorney's fees and costs, for violation of the Fair Labor Standards Act.

### COUNT II:  Defendants' Violation of the Florida Whistle-Blower Act

50.   The Plaintiff adopts and incorporates herein each and every one of the allegations contained within paragraph 1 through 41 above as if fully re-alleged herein.

51.   The Defendants were intentionally engaged in knowingly violating the law by failing to pay the Plaintiff her wages earned with the required withholdings for income tax, social security and medicare.

52. The Plaintiff objected to the Defendants' intentional violation of the law, and requested that they cease.

53. The Defendants terminated the Plaintiff's employment in retaliation for her objection and request.

54. The Plaintiff has been damaged as a direct and proximate cause of the Defendants' unlawful employment termination.

WHEREFORE, the Plaintiff demands judgment against each Defendant, jointly and severally, for violation of Section 448.102(3) Florida Statutes, otherwise known as the Florida Whistle Blower Statute, an award of all legal and equitable damages to which she is entitled thereunder, plus interest attorney's fees and costs.

Filed this 4th day of August, 2015, on behalf of the Plaintiff, ANA SMULEVICH.

Respectfully Submitted,

By: _____
ALAN R. SOVEN, ESQUIRE
Florida Bar No. 259421
ALAN R. SOVEN, P.A.
1571 N.W. 13th Court
Miami, FL 33125-1605
E-Mail: Alan@alansoven.com
Telephone: 305-326-0330
Facsimile: 305-326-0219

15